UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MELISSA K. O'NEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cv-0318-DKL-WTL |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

*Entry on Judicial Review*

Melissa O'Neal brings this action, seeking judicial review of the Social Security
Administration's decision denying her application for supplemental security income
under Title XVI of the Social Security Act (the "Act"). *See* 42 U.S.C. § 405(g). The parties
have consented to have the undersigned Magistrate Judge conduct all proceedings in the
case. The Court rules as follows.

*Background*

O'Neal alleges that she became disabled on March 23, 2012, because of PTSD (post-
traumatic stress disorder), anxiety, mood disorder, major depression, and learning
disability. [R. 53, 56.] Her claim was denied initially and on reconsideration. She
requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held
in October 2013. O'Neal, represented by counsel, appeared and testified. Her mental

health services case manager, Jonathan Subish, also testified.  A vocational expert ("VE") appeared by telephone and testified as well.

O'Neal's treatment note from Meridian Services mental health clinic dated May 23, 2011, contains diagnoses for Major Depression, Severe, without psychotic features as well as PTSD.  [R. 525.]  She was assigned a Global Assessment of Functioning ("GAF") score of 40 [R. 526], indicating "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) *or* major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed adult avoids friends, neglects family, and is unable to work…." https://en.wikipedia.org/wiki/Global_Assessment_of_Functioning (last visited Mar. 14, 2016).  O'Neal received outpatient treatment services from the Meridian Services clinic from May 2011 until September 3, 2013, with bi-weekly counseling sessions.  [*See* R. 255-423, 462-610.]  She sees a therapist and has a case manager who visits her in her home.

On March 23, 2012, Joanita Wesler, PMHP-BC, a psychiatric mental health nurse practitioner at Meridian Services, completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) for O'Neal.  [R. 251-54.]  Wesler indicated that O'Neal's ability to understand, remember and carry out instructions was affected by her impairment, noting mild restrictions in the ability to understand, remember, and carry out simple instructions; moderate restrictions in the ability to make judgments on simple work-related decisions; and marked restrictions in her ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions.  [R. 252.]  The nurse practitioner wrote that O'Neal's "anxiety impairs her

2

thought process which makes it difficult to make judgments and carry out complex instructions." [*Id.*] According to Wesler, O'Neal had marked restrictions in her ability to interact appropriately with the public, supervisors, and co-workers, and in her ability to respond appropriately to usual work situations and changes in a routine work setting. [R. 253.] She explained that O'Neal had a mood disorder and anxiety and that when she is in a public setting she becomes "very nervous which makes it hard for her to interact with others." [*Id.*] Wesler also noted that O'Neal had a learning disability.

On May 5, 2012, O'Neal underwent a consultative examination with Ceola Berry, Ph.D. [R. 424-35.] Dr. Berry observed O'Neal to be "without frank signs and symptoms of pain-related or anxiety-related behavior." [R. 426.] Berry wrote that O'Neal reported depression and anxiety "as successfully managed by psychotropic protocol." [*Id.*] O'Neal "endorsed difficulty concentrating, remembering things and making decisions," which Dr. Berry indicated "was somewhat evident during the examination." [*Id.*] In Dr. Berry's opinion, the "results of th[e] mental status exam do not reveal significant problems with concentration [and] short-term memory." [*Id.*] Dr. Berry concluded that O'Neal's ability to work "would be primarily affected by her perceived mood states." [*Id.*] O'Neal's ability to sustain attention, concentrate and exert mental control was determined to be "in the low average range." [R. 429.] Dr. Berry diagnosed Major Depressive Disorder, Chronic, Severe with Psychosis; history of opioid dependency; and average intellectual functioning, based on her IQ score of 90 on the Weschler Adult Intelligence Scale-Fourth Edition ("WAIS"). [R. 426-28.] Dr. Berry assessed O'Neil's GAF at 69 and explained that "when symptoms are present, they prompt some difficulty in

social and occupational functioning; [but she was] generally functioning pretty well; has some meaningful relationships." [R. 426.]

Also in May 2012, Amy S. Johnson, Ph.D., completed a Mental Residual Functional Capacity Assessment. [R. 436-39.] She found that O'Neal was moderately limited in her ability to understand and remember detailed instructions, but not significantly limited in the ability to remember locations and work-like procedures and in the ability to understand and remember short and simple instructions. [R. 436.] Johnson determined that O'Neal was moderately limited in the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to work in coordination with or proximity to others without being distracted by them, but not significantly limited in other activities involving sustained concentration and persistence. [*Id.*] O'Neal was assessed moderately limited in the ability to interact appropriately with the general public, but not significantly limited in other activities involving social interaction and adaption. [R. 437.] In support of her assessment, Johnson explained that O'Neal's mental status exam revealed "[n]o significant problems with concentration" and O'Neal scored a full scale IQ of 90, but she "cannot pay attention" when under stress and does not handle stress or change well. [R. 438.] Johnson wrote that O'Neal's attention and concentration were "moderately impacted but appear reasonable for tasks, and [O'Neal] appears to be able to tolerate superficial, casual interactions with others." [*Id.*] Johnson concluded:

> Claimant has the mental capacity to understand, remember, and follow
> simple to mildly complex instructions. Cl[aiman]t is restricted to work that
> involves brief, superficial interactions w/fellow workers, supervisors and

> the public.  Within these parameters and in the context of performing semi-skilled tasks, cl[aiman]t is able to sustain attention and concentration skills to carry out work-like tasks with reasonable pace and persistence.

[R. 438.]

In June 2012, a behavioral clinician at Meridian Services completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) for O'Neal.  [R. 240-42.]  The clinician indicated that O'Neal had marked restrictions in every work-related mental activity.  She wrote that O'Neal was diagnosed with anxiety, which causes her to panic under pressure, and that when she panics, she was unable to function normally and complete everyday tasks.  [R. 240.]  According to the clinician, O'Neal had marked restrictions in her ability to interact appropriately with supervisors, coworkers, and the public, and in her ability to respond to changes in a routine work setting.  [R. 241.]

In May and July 2012, State agency psychologists reviewed the file and determined O'Neal did not meet a listed impairment, including Listing 12.04 for affective disorders.  [R. 450, 458.]  The reviewers found O'Neal to have mild limitation in activities of daily living, and moderate difficulties in maintaining social functioning and in concentration, persistence, and pace, and had no episodes of decompensation.  [*Id.*]

As noted, O'Neal testified at the hearing before the ALJ.  Her attorney requested that the door to the hearing room be left open because of her anxiety.  The ALJ complied with the request.  O'Neal was thirty-three years of age at the time of the hearing and the ALJ's decision.  She testified that she completed the eleventh grade and took special education classes.  [R. 28, 33.]  She attempted to obtain her GED but did not succeed because she did not pass all the tests.  [R. 28.]  O'Neal lives with her husband and two

sons, ages 12 and 13 at the time of the hearing, all of whom suffer from disabilities. [R. 29-30.] She was able to do the housework. O'Neal let her driver's license expire about three years before the hearing because she had "blacked out" while driving her children. She was too afraid to drive after that. She was afraid to leave her house. She would go grocery shopping early in the morning when only a few people were there. She missed work due to her anxiety.

O'Neal had been molested and raped as a child. As a result, she was anxious around people, paranoid, and was nervous around men. She feared that someone was going to grab her. [R. 33.] She said that she had difficulty concentrating, at times forgetting what program she was watching on T.V. or what a conversation was about. She said she was unable to concentrate on tasks for two hours straight. [R. 36.] When she was really "stressed out," she would get lightheaded and dizzy. She would pass out about once a week from stress. [R. 37.] She was taking prescription medications of Pritiq, an antidepressant used to treat Major Depressive Disorder; Buspirone for anxiety; and Mirtazapine, an antidepressant. [R. 30.]

O'Neal's case manager, Jonathan Subish, testified at the hearing. (The ALJ's decision mistakenly refers to him as Johnathan Przybysz.) Subish brought O'Neal from Richmond, Indiana, to the hearing in Indianapolis. He had been a mental health case manager for five years and had a bachelor's degree in business administration. He had known O'Neal for approximately one year and met with her in her home every two weeks. O'Neal also met with a therapist every other week. As her case manager, Subish helped O'Neal with access to social services, such as pet food stamps. He periodically

reviewed her treatment notes. [R. 40.] He testified that he did not know of any full time job that she could keep, mainly because of her anxiety, as she and her husband reported it to him. [R. 41.]

The ALJ asked the VE whether an individual "capable of full work where they have the mental capacity to understand, remember and follow simple instructions within those parameters and in the context to perform simple, routine, repetitive concrete tangible tasks," who "is able to sustain attention and concentration skills sufficient to carry out work-like tasks with reasonable pace and persistence" and "should only have occasional … interaction with the general public" would be able to perform O'Neal's past work? [R. 43.] The VE responded in the negative because of the requirement of working with people in the past work. [*Id.*] However, the VE testified that an individual with the same RFC would be able to perform jobs existing in the state and national economy such as dishwasher, janitor, and groundskeeper. [R. 43-44.] An individual limited to brief, superficial interaction with coworkers, supervisors and the general public and no production rate or pace work also would be able to perform such jobs. [R. 44.]

ALJ Monica LaPolt issued her written decision, denying benefits. She first found that O'Neal had not engaged in substantial gainful activity since her application date of March 23, 2012, and that she had severe impairments of post-traumatic stress disorder and anxiety. [R. 10.] The ALJ determined that O'Neal did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment, referring to Listing 12.06 for anxiety-related disorders. The ALJ found that O'Neal had no restriction in activities of daily living, mild difficulties in social

functioning, moderate difficulties in concentration, persistence or pace, and had experienced no episodes of decompensation.. [R. 11.] In making these determinations, the ALJ relied on O'Neal's own function reports, her husband's reports of her function, Dr. Berry's consultative exam, the inability to objectively verify O'Neal's subjective allegations with any reasonable degree of certainly, and the lack of objective findings to support significant deficits in cognitive and memory function. [*Id.*] Upon considering the record, the ALJ found that O'Neal had the following residual functional capacity:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: [she] has the mental capacity to understand, remember and follow simple instructions. Within these parameters and in the context of performing simple, routine, repetitive, concrete, tangible tasks, [she] is able to sustain attention and concentration skills sufficient to carry out work-like tasks with reasonable pace and persistence.

[R. 12.]

O'Neal's allegations regarding the intensity, persistence, and limiting effects of her symptoms, the ALJ determined, were not entirely credible. [*Id.*] The ALJ relied on objective medical findings, namely O'Neal's IQ score, and Dr. Berry's conclusion that O'Neal's intellectual functioning was average. [R. 12-13.] The ALJ found that O'Neal had normal daily activities and that clinical findings in her treatment history did not support her contention that she was disabled, including improvement in her GAF score to 50, only one point removed from the range that would indicate a moderate condition. [R. 13-14.] Other support for the conclusion that O'Neal was not disabled was found in the mental status evaluation with Dr. Berry and Berry's conclusions, the state agency reviewing psychologists' assessment of O'Neal's limitations, and the treatment evidence

which showed slow improvement. [R. 14-15.] The ALJ noted that O'Neal's complaint of "blacking out" was not supported in the record, that her medication had been "relatively effective in controlling [her] symptoms," and that her treatment was "routine and/or conservative in nature, rendered nearly exclusively by social workers, case managers and other mental health clinicians but rarely, if ever a psychiatrist or psychologist." [R. 15.] Because of this, the ALJ found that Dr. Berry's evaluation took on "added significan[ce]." [*Id.*]

The ALJ gave "the most probative weight" to the state agency reviewing psychologists' assessment because it was consistent with the objective and clinical findings in the medical record. [R. 16.] She considered the medical source statement of the behavioral clinician, but gave it little weight because it was not consistent with O'Neal's medical record and was conclusory. [*Id.*] The ALJ also reasoned that the clinician "simply checked each 'marked' box." [*Id*] The case manager's testimony was considered, but the ALJ gave it little weight because the case manager lacked specialized training or certification, and his opinion that O'Neal was disabled and could not work a full-time job was inconsistent with his observations in the record. [*Id.*]

Based on the RFC finding and the VE's testimony, the ALJ found that O'Neal was unable to perform any of her past relevant work. [R. 16.] And based on O'Neal's age, work experience, and RFC and the VE's testimony, the ALJ found that there were jobs that exist in significant numbers in the national economy that O'Neal can perform, *e.g.*, dishwasher, janitor, and groundskeeper. [*Id.*] Therefore, the ALJ concluded that O'Neal

was not disabled under the Act and denied benefits. [R. 22.] The Appeals Council denied review, and O'Neal commenced this action for judicial review.

*Discussion*

Judicial review of the ALJ's decision is limited. *See Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015). The decision will be upheld if the ALJ applied the correct legal standards and the decision is supported by substantial evidence. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stepp*, 795 F.3d at 718 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). A court may not reweigh the facts or evidence or make its own credibility determinations. *Id.* An ALJ need only "minimally articulate" her reasons for rejecting or accepting evidence, which has been described as a very "lax" standard. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). An ALJ need not mention every piece of evidence, but must build a "logical bridge" from the evidence to his conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

O'Neal raises three main arguments: (1) the ALJ's finding that she was not disabled due to major depression with psychotic features, anxiety, and PTSD is not supported by substantial evidence; (2) the ALJ's failure to summon a medical advisor to testify as to whether her combined impairments met or equaled a listed impairment requires reversal; and (3) the ALJ failed to include all of her limitations in the hypothetical to the VE.

First, O'Neal argues that the ALJ ignored or rejected evidence that proved she was disabled.  She also argues that the ALJ relied only on her lay assessment of O'Neal's functioning and erroneously found that she failed to satisfy the "B" criteria under Listing 12.06(A), which requires evidence of marked impairment in two functional categories.

O'Neal contends that the ALJ arbitrarily rejected the June 2012 functional evaluation by her treating mental health clinic that she had a marked impairment in at least two functional areas—activities of daily living, social functioning, and concentration, persistence, and pace.  The ALJ did not arbitrarily reject the evaluation at issue.  Instead, she gave good reasons for according the medical source statement of the behavioral clinician little weight:  it was not consistent with O'Neal's medical record and evidence of O'Neal's daily activities (being able to care for her sons), it was conclusory, and it appeared that the clinician simply checked each "marked" box without acknowledging that such limitations would preclude the adaptive functioning O'Neal had demonstrated.  [R. 16.]

Next, O'Neal maintains that the B criteria were met by the consistent GAF assessments of 40 and 50 by her mental health clinic, which she asserts was an expert opinion that she was not capable of keeping a job.  However, the ALJ did not find that those GAF scores accurately indicated O'Neal's mental condition.  [R. 13-15.]  The ALJ reasoned that the lower GAF scores were from social workers, nurse practitioners, and other clinicians who were less qualified than Dr. Berry who assessed a GAF of 69, indicating a very mild condition.  [R. 14.]  In addition, the ALJ reasoned that it appeared

that the GAF score of 50 was "simply carried over from visit to visit." [*Id.*]  The repetition in the treatment notes from Meridian Services lends support to this conclusion.

Referring to the medical source statement completed by her behavioral clinician, O'Neal maintains that the ALJ was required to give controlling weight to her treating physicians' opinions and erred in rejecting their opinions for those of non-treating, non-examining agency psychologists and the ALJ's own lay opinion.  Under the "treating physician rule," an ALJ must give controlling weight to a treating source's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record.  20 C.F.R. § 416.927(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).  Here, the ALJ justified her reasons for not giving the behavioral clinician's opinion "controlling weight":  (1) it was not consistent with O'Neal's medical record or with O'Neal's ability to care for her two sons, meaning that it was inconsistent with other substantial evidence in the record; (2) it was conclusory, meaning that it was not well-supported; and (3) it appeared that the behavioral clinician simply checked each "marked" box, again indicating that it lacked support.  [*See* R. 16.]  Accordingly, the behavior clinician's opinion as to her mental impairments was not entitled to controlling weight.

Regarding the need for a medical advisor to testify on the question of medical equivalence, an ALJ must consider an expert's opinion on the issue of whether a

12

claimant's impairment meets or equals a listed impairment.  *Barnett v. Barnhart*, 381 F.3d 664, 670-71 (7th Cir. 2004).  A state agency reviewing physician or psychologist's opinion on a disability form satisfies this requirement and, contrary to O'Neal's argument, such an opinion provides substantial evidence on medical equivalence.  *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (concluding that state agency physician's opinions in disability forms as to whether claimant's condition met a listing constituted substantial evidence supporting the ALJ's finding).  Given that the ALJ relied on the state agency reviewing psychologists' opinions in this case, O'Neal contends that the psychologists did not review the July 10, 2013, mental health treatment records.[1]  But O'Neal fails to explain how these treatment records proved that she met or equaled a listed impairment. The Court will not make arguments for her.

In addition, the ALJ did not simply assume that O'Neal's combined impairments failed to meet or equal a listed impairment.  Rather, the ALJ considered and provided a discussion of the issue and evidence in her written decision.  [*See* R. 10-12, 14, 16.]  Nor did the ALJ base her step 3 decision on her layperson's opinion.  As O'Neal concedes, the ALJ relied on the state agency reviewing psychologists' opinions.  Thus, the ALJ based her finding on not just one but two expert opinions.  Furthermore, an ALJ is not required to obtain an updated opinion unless she finds that additional medical evidence "may

---

[1] The ALJ did not expressly refer to the reviewing psychologists' opinions in the section of her decision containing the step 3 analysis.  But the Court reads the ALJ's decision as a whole, and an ALJ is not required to repeat her discussion of the evidence in both the step-three and RFC sections of her decision.  *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004).

change the State agency medical or psychological consultant's finding" as to medical equivalency. *See S.N.B. v. Colvin*, No. 1:14-CV-01371-SEB-DML, 2016 WL 775787, at *5 (S.D. Ind. Feb. 9, 2016); *Graves v. Astrue,* No. 1:11–cv–249–SEB–DKL, 2012 WL 4019533, at *3 (S.D. Ind. Sept. 11, 2012) (citing Social Security Ruling 96–6p). The Court finds nothing in the record that may have changed the state agency reviewing psychologists' findings as to medical equivalency.

O'Neal's final, developed argument is that the ALJ failed to include all of O'Neal's functional limitations caused by her mental impairments in the hypothetical to the VE. An ALJ is generally required to "orient the VE to the totality of a claimant's limitations." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 n.3 (7th Cir. 2010) ("[T]he most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical."); *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) ("Ordinarily, a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record."). O'Neal maintains that the ALJ failed to account for her moderate limitations in concentration, persistence, and pace.

The ALJ asked the VE to consider an individual with O'Neal's age, education and work experience, who has no physical limitations and has "the mental capacity to understand, remember and follow simple instructions within those parameters and in the context to perform simple, routine, repetitive, concrete, tangible tasks … is able to sustain attention and concentration skills sufficient to carry out work-like tasks with reasonable pace and persistence" and "should only have occasional … interaction with the general public" could perform any work. The VE answered that there were

occupations that such an individual could perform, including dishwasher, janitor, and groundskeeper.   The hypothetical to the VE accounts for the specific limitations in concentration, persistence, and pace that the ALJ found O'Neal to have.  O'Neal further complains that the ALJ "omitted almost all of the limitations due to her anxiety and major depression with psychotic features."  [*Pl.'s Supporting Br.* 13.]  But as is evident from the hypothetical, the ALJ included in that hypothetical all of the mental limitations that the ALJ found O'Neal had.  In fact, the hypotheticals to the VE included limitations that the ALJ did not find O'Neal to have: limitations on interaction with the general public, coworkers, and supervisor, as well as limiting the hypothetical individual to no production rate or pace work.  [R. 43-44.]  Even with those additional limitations, the VE testified that the hypothetical individual could perform jobs existing in significant numbers in the national economy.  [*Id.*]

For completeness, the Court notes that Plaintiff offers up a few sweeping and undeveloped arguments: that the ALJ's decision "fails to build an accurate and logical bridge" from the evidence to the conclusions and that it is "contrary to the medical-psychological evidence, and is plainly erroneous."  [*Pl.'s Supporting Br.* at 9.]  She also implies that the ALJ selectively discussed only the evidence favoring the denial of benefits and mischaracterized the evidence.  [*Id.*]  None of these arguments, however, were developed, and therefore they have been forfeited.  *See, e.g.*, *Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001) ("We have held time and again that perfunctory and undeveloped arguments … are waived.").  In any event, upon reviewing the record evidence and the ALJ's decision, the undersigned finds no support for these arguments.

*Conclusion*

For the foregoing reasons, the undersigned finds that the agency's decision should

be affirmed.  Final judgment will be entered accordingly.

ENTERED THIS DATE: 03/17/2016

*Denise K. LaRue*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Electronic distribution to counsel of record

16